IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  | | |
|---|---|---|
| | * | |
| BENJAMIN Y. DANSO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-1396 |
| | * | |
| OCWEN LOAN SERVICING, LLC, | | |
| MORTGAGE ELECTRONIC | * | |
| REGISTRATION SYSTEMS, INC., | | |
| DEUTSCHE BANK NATIONAL | * | |
| TRUST COMPANY, | | |
| | * | |
| Defendants. | | |
| | ****** | |

## MEMORANDUM OPINION

Pending in this consumer lending case is a motion to dismiss for failure to state a claim filed by Ocwen Loan Servicing, LLC, Mortgage Electronic Registration Systems, Inc., and Deutsche Bank National Trust Company as Trustee for IndyMac INDX Mortgage Loan Trust 2006-AR2, Mortgage Pass-Through Certificates Series 2006 AR2 (collectively, "Defendants"). ECF No. 17. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, the motion will be granted.

## I.    BACKGROUND

The facts outlined here taken from Plaintiff's Complaint and its attachments.[1] Unless otherwise noted, all facts are construed in the light most favorable to the Plaintiff, the nonmoving party.

---

[1] This Court may take judicial notice of matters of public record and documents attached to the Complaint. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, the Deed of Trust, the Corporate

On December 30, 2005, Benjamin Y. Danso ("Plaintiff") executed an Adjustable Rate

Note ("Note") in the amount of $320,000 to IndyMac Bank, F.S.B. ("IndyMac") for the purposes

of refinancing his property at 12717 Turquoise Terrace, Silver Spring, Maryland 20904. ECF

No. 2-2 at 3. The Note was secured by a Deed of Trust to IndyMac executed on the same date

and which was recorded among the Land Records of Montgomery County, Maryland. ECF No.

2-2. The Deed of Trust, signed by Plaintiff, named Mortgage Electronic Registration Systems,

Inc. ("MERS") the beneficiary under the security interest as the nominee for IndyMac, its

successors, and assigns.[2] ECF No. 2-2 at 2.

In executing the security instrument, Plaintiff agreed that "MERS holds only legal title to

the interests granted by Borrower in this Security Instrument, but, if necessary to comply with

law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the

right: to exercise any or all of those interests, including, but not limited to, the right to foreclose

---

Assignment of Deed of Trust, and the Pooling and Service Agreement are all public records and attached to the Plaintiff's Complaint. Thus, the Court will use these documents. Defendants ask this Court to disregard or, alternatively, strike the Joseph R. Esquivel Affidavit, also attached to Plaintiff's Complaint, as inadmissible because Esquivel's qualifications do not render him an expert. ECF No. 17-1 at 6–7.  A court may consider documents attached to a Complaint if they "are integral to the complaint and authentic." *Philips*, 572 F.3d  at 180. "A document is integral if its very existence and not the mere information it contains, gives rise to the legal rights asserted." *Drubetskoy v. Wells Fargo Bank, N.A.*, No. CIV. CCB-13-2196, 2013 WL 6839508, at *2 (D. Md. Dec. 20, 2013) (citation and internal quotation marks omitted). Here, the Esquivel Affidavit outlines Esquivel's findings and conclusions regarding the propriety of Defendants' conduct with respect to the Note and Deed of Trust. The document itself is tantamount to an expert report and not integral to Plaintiff's claims. Thus, the Court will disregard it.

[2] This is a typical practice. MERS is a corporation established in the mid-1990s to eliminate the need to record assignments and related documents in county property recorder's offices. Before MERS, the requirement that an assignment of the mortgage be recorded in the local land records made buying and selling mortgage-backed loans a tedious process. *See Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1073 (R.I. 2013) ("The MERS® System was developed to bring efficiency and order to this increasingly complex industry."). MERS created a computer database that tracks servicing and ownership rights of mortgage loans. Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1359, 1361 (2010). Mortgage lenders often list MERS as the "mortgagee of record" on the paper mortgage rather than the lender. MERS remains the mortgagee for the life of a mortgage loan even after the original lender or a subsequent assignee transfers the loan. *Id.* at 1361–62.

and sell the Property; and to take any action required of Lender including, but not limited to,

releasing and canceling this Security Instrument." *Id.* at 4.

   The Deed of Trust states that "[t]he Note or a partial interest in the Note (together with

this Security Instrument) can be sold one or more times without prior notice to Borrower." *Id.* at

12. The Deed of Trust also clearly states that Plaintiff's obligations remain the same, regardless

of whether the Note is sold: "If the Note is sold and thereafter the Loan is serviced by a Loan

Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to

Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and

are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." *Id.*

   On or about February 1, 2006, Plaintiff's Note was pooled with several other notes in a

residential mortgage-backed securitization trust, IndyMac INDX Mortgage Loan Trust 2006-

AR2. ECF No. 2 at 3. As the Maryland Court of Appeals has explained:

> [s]ecuritization starts when a mortgage originator sells a mortgage
> and its note to a buyer, who is typically a subsidiary of an
> investment bank. The investment bank bundles together the
> multitude of mortgages it purchased into a "special purpose
> vehicle," usually in the form of a trust, and sells the income rights
> to other investors. A pooling and servicing agreement establishes
> two entities that maintain the trust: a trustee, who manages the loan
> assets, and a servicer, who communicates with and collects
> monthly payments from the mortgagors.

*Deutsche Bank Nat. Trust Co. v. Brock*, 430 Md. 714, 718 (2013) (quoting *Anderson v. Burson*,

424 Md. 232, 237 (2011)). Here, the relevant pooling and servicing agreement names IndyMac

as the servicer and Deutsche Bank National Trust Company ("Deutsche Bank") as the trustee.

ECF No. 2-6.

   In August 2015, MERS, acting as nominee for IndyMac Bank, executed and recorded a

Corporate Assignment of Deed of Trust in the Land Records of Montgomery County, Maryland,

which granted all beneficial interest under the Deed of Trust to Deutsche Bank. ECF No. 2-3.

Because IndyMac transferred its interest in Plaintiff's Note to Deutsche Bank—and received

payment for the transfer—Plaintiff alleges that he is released from his obligation to pay back the

loan pursuant to the terms of the Deed of Trust. ECF No. 2 at 4. Plaintiff also alleges, *inter alia*,

that Defendants have no right to foreclose upon his property because they do not possess the

original Note. *Id.* at 7–8.

While IndyMac Mortgage Services, a division of OneWest Bank, F.S.B., originally

serviced Plaintiff's loan, Ocwen Loan Servicing, LLC ("Ocwen Loan Servicing") became the

loan servicer sometime after the Deed of Trust was transferred to Deutsche Bank. ECF No. 2 at

10.[3]

On March 11, 2016, Plaintiff filed this Complaint against Defendants in the Circuit Court

for Montgomery County, alleging that Defendants (1) breached their fiduciary duty by not

releasing his mortgage after receiving payment and by attempting to enforce the mortgage, (2)

slandered his property's title by not releasing the mortgage and by recording an assignment of

mortgage, and (3) caused him emotional distress by threatening him with foreclosure. Plaintiff

also alludes to claims for breach of contract and unconscionability, suggesting that Defendants'

breached the Deed of Trust by not releasing Plaintiff from his debt obligations after his mortgage

was securitized. *See id.* at 1, 3. Lastly, Plaintiff asks for a declaration as to the "rights,

obligations and interest of the parties with regard to the subject property." ECF No. 2 at 13.

Neither party directly addresses Plaintiff's current status under the mortgage, but Plaintiff's

papers suggest that he commenced the present lawsuit in anticipation of foreclosure proceedings.

---

[3] As Plaintiff explains, IndyMac failed in 2008 and was seized by the United States FDIC. ECF No. 2 at 10. The
FDIC sold most of IndyMac's assets to OneWest Bank, F.S.B. *See Information for IndyMac Bank, F.S.B., and
IndyMac Federal Bank, F.S.B., Pasadena, CA*, FDIC,
https://www.fdic.gov/bank/individual/failed/IndyMac.html#Introduction (last visited Aug. 16, 2016).

Defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1441(a) based on diversity jurisdiction, ECF No. 1, and then filed the instant  motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 17.

## II.     STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). A *pro se* plaintiff is held to a "'less stringent'" standard than a lawyer, and the Court must liberally construe a *pro se* plaintiff's complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III.    ANALYSIS

The Plaintiff's Complaint, although difficult to decipher, alleges that the Defendants acted improperly in managing the Note and Deed of Trust.[4] First, Plaintiff claims that because his loan was securitized, he was released from his obligations under the Note. *See, e.g.*, ECF No.

---

[4] Plaintiff's Complaint is a variation on a form complaint circulated on the internet and tracks several cases filed in this Court. *See, e.g.*, *Brown v. Ocwen Loan Servicing, LLC*, No. CIV. PJM 14-3454, 2015 WL 5008763 (D. Md. Aug. 20, 2015); *Simmons v. Bank of Am., N.A.*, No. CIV. PJM 13-0733, 2014 WL 509386 (D. Md. Feb. 6, 2014); *Somarriba v. Greenpoint Mortgage Funding, Inc.*, No. 13-CV-072-RWT, 2013 WL 5308286 (D. Md. Sept. 19, 2013); *see also* http://certifiedforensicloanauditors.com/pdfs/SAMPLECOMPLAINT.pdf.

2 at 5. He repeatedly references "Covenant 23" in the Deed of Trust, which states, "Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note 'paid' and return the Note to Borrower." ECF No. 2-2 at 13. In essence, Plaintiff believes that when MERS transferred and assigned IndyMac's interest in the Deed of Trust to Deutsche Bank, Plaintiff was released from his debt obligations because Deutsche Bank satisfied the debt owed to IndyMac.

It is well-established, in this Court and others, that "[a]s a matter of law, securitization alone does not render a note or deed of trust unenforceable and does not alter a borrower's obligation to pay back his or her loan." *Howes v. Wells Fargo Bank, N.A.*, No. CV ELH-14-2814, 2015 WL 5836924, at \*26 (D. Md. Sept. 30, 2015) (internal quotation marks omitted) (citing cases); *see also Benson v. Ocwen Loan Servicing, LLC*, No. 2:14-CV-02495-TLN, 2014 WL 6775262, at \*4 (E.D. Cal. Dec. 1, 2014). "[S]ecuritization merely creates a separate contract, distinct from [Plaintiff's] debt obligations' under the note and does not change the relationship of the parties in any way." *Reyes v. GMAC Mortgage LLC*, No. 2:11-CV-100 JCM RJJ, 2011 WL 1322775, at \*3 (D. Nev. Apr. 5, 2011) (citations and internal quotation marks omitted). It is "not some sort of illicit scheme that taints the underlying debt." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 749 (6th Cir. 2014).

Relatedly, Plaintiff claims that MERS, "acting solely as nominee for IndyMac," was not authorized to transfer its rights under the Deed of Trust to the parties now threatening Plaintiff with foreclosure. ECF No. 2 at 3, 7. Nothing in the Deed of Trust prohibits MERS from assigning its rights. To the contrary, the Deed of Trust allows MERS to exercise any rights held by the Lender under the security interest, including assigning the Deed of Trust or enforcing the Note. ECF No. 2-2 at 4. Courts have generally upheld the use of MERS in the transfer of

6

mortgage notes. *See Parker v. Deutsche Bank Nat'l Trust Co.*, No. CIV.A. WMN-12-3358, 2013 WL 1390004, at *3 (D. Md. Apr. 3, 2013) (noting that courts "have consistently found that the system of recordation is proper and assignments made through that system are valid" (citations and internal quotation marks omitted)); *see also Samples v. Bank of Am., N.A.*, No. 3:12-CV-44, 2012 WL 1309135, at *4 (E.D. Tenn. Apr. 16, 2012) ("Several courts have noted that such language explicitly grants MERS the power to act as the agent of any valid note holder, including assigning a deed of trust and enforcing a note."). Since MERS's founding, "borrowers who have defaulted on their loan obligations have attempted, without success, to attack the validity of their mortgage obligations based on the involvement of MERS." *See Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 478 (6th Cir. 2014) (quoting *Golliday v. Chase Home Fin., LLC*, No. 1:10–cv–532, 2011 WL 4352554, at *7 (W.D. Mich. Aug. 23, 2011)).

Plaintiff also lacks standing to challenge the propriety of the assignment of the Note or Deed of Trust. In the consumer lending context, a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Wolf v. Fed. Nat'l Mortgage Ass'n*, 512 F. App'x  336, 342 (4th Cir. 2013) (citation and internal quotation marks omitted). Here, Plaintiff was not a party to the assignment from MERS to Deutsche Bank, nor an intended beneficiary of the assignment. Thus, he cannot challenge its validity. *See id.* (holding that a mortgagor lacks standing to challenge the propriety of the assignment of the note); *Quattlebaum v. Bank of Am., N.A.*, No. CIV.A. TDC-14-2688, 2015 WL 1085707, at *4 (D. Md. Mar. 10, 2015) ("What the lender chooses to do with that entitlement— whether to keep it or to sell it to another financial institution—is a decision [the plaintiff] has no standing to challenge.").

Second, Plaintiff asserts that the Defendants' actions are deemed invalid until they can produce the original "wet-ink" Note to prove that the entities currently threatening Plaintiff with foreclosure are "authorize[d] to conduct the foreclosure." ECF No. 2 at 7. This Court has repeatedly rejected this "show me the note" argument. *See Jones v. Bank of N.Y. Mellon*, No. DKC–13–3005, 2014 WL 3778685, at *4 (D. Md. Jul. 29, 2014); *Harris v. Household Finance Corp.*, RWT–14–606, 2014 WL 3571981, at *2 (D. Md. Jul. 18, 2014) (explaining that "there is no recognizable claim" that a mortgagor must "produce 'wet ink' signature documents" in order for a mortgage to be valid); *Quattlebaum*, 2015 WL 1085707, at *6.

Moreover, in Maryland, the deed and the note cannot be split; "[t]he title to any promissory note . . . conclusively is presumed to be vested in the person holding the record title to the mortgage." Md. Code Ann., Real Prop. § 7–103(a). Here, the Note was transferred to Deutsche Bank as trustee for a securitized pool of loans around February 2006, according to the Complaint and the relevant Pooling and Servicing Agreement. ECF No. 2 at 3; ECF No. 2-6. MERS, acting as nominee for IndyMac, assigned the Deed of Trust to Deutsche Bank on August 21, 2015. ECF No. 2-3. Consequently, Deutsche Bank is "conclusively presumed" to have the right to enforce the Note attached to that Deed of Trust.

Third, Plaintiff asserts that the Corporate Assignment of the Deed of Trust is invalid because the individual who signed it on behalf of MERS, Mr. Joel Simmons, fraudulently held himself out as an assistant secretary for MERS. ECF No. 2 at 7; ECF No. 2-3. Simmons' primary occupation at the time was an employee of Defendant Ocwen Loan Servicing. As a matter of convenience, MERS typically allows employees of mortgage servicers to enter their names on MERS website, which designates the employees as certifying officers of MERS with the job title of assistant secretary or vice president. *See* Christopher L. Peterson, *Two Faces: Demystifying*

*the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111, 144 (2011). In this capacity, these employees can then sign and record documents, such as mortgage assignments, on behalf of MERS. Courts have held that this practice does not give rise to a legally cognizable claim. *See Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 294 (1st Cir. 2013) (using Massachusetts law); *Bell v. Clarke*, No. CV TDC-15-1621, 2016 WL 1045959, at *4 (D. Md. Mar. 16, 2016) ("The practice is not illegal, and assignments executed in this manner are valid.").

The Court will now turn to Plaintiff's individual claims of breach of fiduciary duty, slander of title, intentional infliction of emotional distress, and request for declaratory judgment.

## A.    Count One: Breach of Fiduciary Duty

Plaintiff asserts that Defendants breached their fiduciary duty of loyalty to Plaintiff by failing to release Plaintiff from his debt obligations after the loan was securitized, as well as falsely representing themselves to be the "holder[s] of the promissory note or other obligations." ECF No. 2 at 4–10. This argument lacks merit, first and foremost because securitization of a mortgage does not alter the borrower's underlying obligations. The transfers and assignments related to the mortgage were lawful, and so Plaintiff is bound by them.

Further, absent special circumstances, Defendants are not fiduciaries *vis* Plaintiff. "It is well established that 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature.'" *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009) (quoting *Yousef v. Trustbank Savs., F.S.B.*, 81 Md. App. 527, 536 (Md. Ct. Spec. App. 1990)). Nor do any of the special circumstances that give rise to a fiduciary duty exist here. *Parker v. Columbia Bank*, 91 Md. App. 346, 370 (1992) (discussing the circumstances under which a court may impose a fiduciary

duty on a bank). *See, e.g.*, *Ayres v. Ocwen Loan Servicing, LLC*, No. CIV. WDQ-13-1597, 2014 WL 4269051, at *4 (D. Md. Aug. 27, 2014) ("Courts have consistently held that banks and mortgage servicers do not owe customers a fiduciary duty."). Accordingly, where no fiduciary relationship exists, there can be no breach of fiduciary relationship. This count is, therefore, dismissed.

**B.      Count Two: Slander of Title**

Plaintiff asserts that Defendants slandered his title by failing to release the Deed of Trust after the Note was securitized and for fraudulently recording the assignment to Deutsche Bank on August 21, 2015. ECF No. 2 at 10–11. In Maryland, a cause of action for "slander of title,"

> may consist of the publication of matter derogatory to the plaintiff's title to his property . . . of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage. The cause of action founded upon it resembles that for defamation, but differs from it materially in the greater burden of proof resting on the plaintiff, and the necessity for special damage in all cases. The falsehood must be communicated to a third person, since the tort consists of interference with the relation with such persons.

*Beane v. McMullen*, 265 Md. 585, 608–09 (1972) (quoting William L. Prosser, *Law of Torts* 919–21 (4th ed. 1971)).

MERS's assignment of the Deed of Trust to Deutsche Bank here was not fraudulent, misleading, or false. Thus Plaintiff cannot sustain a slander of title claim. Additionally, Plaintiff baldly asserts that Defendants acted in a manner "derogatory to the title" which caused him "special damages." ECF No. 2 at 11. Little more than bare allegations have been routinely dismissed. *See Brown v. Ocwen Loan Servicing, LLC*, No. PJM 14-3454, 2015 WL 5008763, at *7 (D. Md. Aug. 20, 2015); *Simmons v. Bank of Am., N.A.*, No. CIV. PJM 13-0733, 2014 WL 509386, at *5 (D. Md. Feb. 6, 2014); *Somarriba v. Greenpoint Mortgage Funding, Inc.*, No. 13-

CV-072-RWT, 2013 WL 5308286, at *6 (D. Md. Sept. 19, 2013). This Court will follow suit here.

## C.      Count Three: Intentional Infliction of Emotional Distress

Plaintiff claims Defendants' initiating foreclosure proceedings are "so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community." ECF No. 2 at 12. Further, Plaintiff asserts that his fear of potentially losing his home has "caused him severe emotional distress." *Id.* To proceed on a claim for IIED, Plaintiff must allege facts showing that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *Brengle v. Greenbelt Homes, Inc.*, 804 F. Supp. 2d 447, 452 (D. Md. 2011). A plaintiff must "plead the element of severe emotional distress with particularity." *McDaniel v. Maryland*, No. CIV.A. RDB-10-00189, 2010 WL 3260007, at *9 (D. Md. Aug. 18, 2010) (requiring the plaintiff to "set forth specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." (citation and internal quotation marks omitted)).

Claims for intentional infliction of emotional distress have survived appellate scrutiny only four times in the history of Maryland's Court of Special Appeals. *See Faya v. Almaraz*, 329 Md. 435 (1993) (reversing dismissal when HIV-positive surgeon operated on the appellants without their knowledge of his disease); *Figueiredo-Torres v. Nickel*, 321 Md. 642 (1991) (reversing dismissal when plaintiff alleged psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple); *B.N. v. K.K.*, 312 Md. 135 (1988) (IIED claim could proceed when physician had sex with nurse without informing her he had herpes and infected her with the disease); *Young v. Hartford Accident & Indem. Co.*, 303 Md.

182 (1985) (reversing dismissal when workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the "sole purpose" of harassing her and forcing her to drop her claim or commit suicide). As is obvious, "the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Lasater v. Guttmann*, 194 Md. App. 431, 450 (2010) (citations and internal quotation marks omitted).

Here, Plaintiff has failed to aver that Defendants have committed any tortious conduct at all. As a result, although Plaintiff may indeed be distressed at the real prospect of losing his home, his distress is not actionable without commission of an underlying tort that amounts to outrageous conduct. Additionally, Plaintiff's clams, even if properly pled, nonetheless rest solely on his fear of losing one's home. While tragic, such fear alone cannot sustain an IIED claim.

**D.      Declaratory Relief**

The Court must  also dismiss Plaintiff's request for declaratory relief. In his Complaint, Plaintiff requests "a judicial determination of the rights, obligations and interest of the parties with regard to the subject property." ECF No. 2 at 13–14. The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration." The purpose of issuing such a judgment is to clarify and settle the legal relations between the parties, and a declaratory judgment should be issued when "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

Federal courts issue declaratory judgments only in cases that (i) meet the constitutional "case or controversy" requirement and also (ii) present a valid basis for subject matter jurisdiction. *See Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F. Supp. 998, 1001 (D. Md. 1985). Generally, the presence of a case or controversy depends on whether the facts alleged

show a controversy "of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). And even where a request for a declaratory judgment meets both of these requirements, the district court, in its discretion, must be satisfied that declaratory relief is appropriate. *See White v. National Union Fire Ins. Co.*, 913 F.2d 165, 168 (4th Cir. 1990) (citing *A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331 (1961)); *Glenmont Hill Associates v. Montgomery Cty., Md.*, 291 F. Supp. 2d 394, 397 (D. Md. 2003) ("[W]hile a federal court is authorized to issue a declaratory judgment, it is not obligated to do so.").

The same deficiencies that plague Plaintiff's claims render imposition of declaratory judgment impossible. Plaintiff's  allegations are altogether too vague and threadbare for the Court to declare the parties' rights that would resolve a dispute or otherwise serve a useful purpose. *See Simmons v. Bank of Am., N.A.*, No. CIV. PJM 13-0733, 2014 WL 509386, at \*7 (D. Md. Feb. 6, 2014) (dismissing a claim for declaratory relief under similar circumstances).

To the extent Plaintiff's prayer for declaratory relief rests on the alleged invalidity of the assignment and securitization of his mortgage, he also lacks standing to mount a challenge. *See Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013) (per curiam) ("Without an enforceable contract right, [Plaintiff] lacks standing to attack the validity of the assignment."); *In re Walker*, 466 B.R. 271, 285 (Bankr. E.D. Pa. 2012) ("[I]t appears that a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement, i.e., the PSA"). Nor do the assignments affect Plaintiff's rights because Plaintiff "still has an obligation under the note to

13

make payments." *Wolf*, 512 F. App'x at 342. Because Plaintiff does not and cannot allege that he is a party to, or an intended third party beneficiary of, any of the allegedly improper assignments, he has no standing to challenge them. *See Henry v. Aurora Loan Servs., LLC*, No. CV TDC-14-1344, 2016 WL 1248672, at *3 (D. Md. Mar. 25, 2016). Accordingly, the Court will decline to enter declaratory relief.

## IV.     CONCLUSION

The motion to dismiss filed by Ocwen Loan Servicing, MERS, and Deutsche Bank is GRANTED and all Counts in the Complaint are DISMISSED WITH PREJUDICE. A separate order will follow.

 8/23/2016                                                              /S/
Date                                                      Paula Xinis
                                                          United States District Judge